NEAL S. SALISIAN, SBN 240277
neal.salisian@salisianlee.com
GLENN R. COFFMAN, SBN 305669
glenn.coffman@salisianlee.com
JARED T. DENSEN, SBN 325164
jared.densen@salisianlee.com
**SALISIAN | LEE LLP**
550 South Hope Street, Suite 750
Los Angeles, California 90071-2924
Telephone:   (213) 622-9100
Facsimile:  (800) 622-9145

MICHELLE A. CHIONGSON, SBN 221740
michelleac@balboacapital.com
MARISA D. POULOS, SBN 197904
marisa.poulos@balboacapital.com
**BALBOA CAPITAL CORPORATION**
575 Anton Boulevard, 12th Floor
Costa Mesa, California 92626
Tel:  (949) 399-6303

Attorneys for Plaintiff
AMERIS BANK d/b/a BALBOA CAPITAL CORPORATION

# THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERIS BANK, a Georgia state-chartered banking corporation, doing business as BALBOA CAPITAL CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>OLD PYLON TRUCKING, LLC, a Texas limited liability company; CANDELARIO GUZMAN MARTINEZ, an individual,<br><br>Defendants. | Case No. 8:23-cv-2368-CJC(KESx)<br><br>[Assigned to the Hon. Cormac J. Carney]<br><br>**BALBOA CAPITAL CORPORATION'S SECOND MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS**<br><br>Complaint Filed:      December 14, 2023 |

1  TO THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:

2  PLEASE TAKE NOTICE that on May 6, 2024, at 1:30 p.m., or as soon

3  thereafter as the matter may be heard, in Courtroom 9B of the Ronald Reagan

4  Federal Building and United States Courthouse, located at 411 West 4th Street,

5  Santa Ana, California 92701-4516, the Honorable Cormac J. Carney presiding,

6  plaintiff Balboa Capital Corporation ("Plaintiff" or "Balboa") will, and hereby

7  does, apply for an entry of default judgment pursuant to Federal Rules of Civil

8  Procedure Rule 55 and Local Rules 55-1, 55-2, and 55-3, against defendants Old

9  Pylon Trucking LLC, a Texas limited liability company ("Old Pylon"), and

10  Candelario Guzman Martinez, an individual ("Martinez") (collectively,

11  "Defendants"), for a judgment amount of **$203,754.99**.

12  PLEASE TAKE FURTHER NOTICE that Balboa seeks a default judgment

13  against Defendants in the total amount of $203,754.99, as Balboa has established

14  (a) a sum certain due and owing by Defendants to Balboa pursuant to the

15  Equipment Finance Agreement entered into by Defendants and Balboa; (b) that

16  Defendants are not in military service and are neither a minor or incompetent

17  person; and (c) costs and attorneys' fees are properly awardable.

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

PLEASE TAKE FURTHER NOTICE that this motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, the supporting declarations of Jared T. Densen and Don Ngo, and the exhibits attached thereto, the pleadings and papers filed in this action, and upon such further briefing, authorities, and argument submitted to the Court prior to, or during, the hearing on this matter.

DATED:  April 8, 2024             SALISIAN | LEE LLP

By:  _____
     Jared T. Densen
     Neal S. Salisian
     Glenn R. Coffman

     Attorneys for Plaintiff
     AMERIS BANK d/b/a BALBOA CAPITAL
     CORPORATION

SECOND MOTION FOR DEFAULT JUDGMENT
Case No.: 8:23-cv-2368-CJC(KESx)

## **TABLE OF CONTENTS**

I.    INTRODUCTION AND RELEVANT FACTS ···································· 1

II.   LEGAL ARGUMENT ······················································· 3

    A.    Plaintiff Will Be Highly Prejudiced If Its Default Judgment Motion Is Denied. ································································· 4

    B.    Plaintiff Has A High Likelihood Of Success On The Merits Of Its Substantive Claims And Its Complaint Is Sufficiently Pled. ············· 5

    C.    The Sum Of Money At Stake Favors An Entry Of A Default Judgment Against Defendants. ···················································· 7

    D.    There Are No Material Facts That Are Reasonably In Dispute. ·········· 8

    E.    Defendants' Defaults Are Not The Result Of Excusable Neglect. ······· 9

    F.    Policy Concerns Favor Default Judgment In This Matter. ·············· 11

    G.    Plaintiff Has Proven Its Damages. ··································· 11

III.  CONCLUSION ···························································· 13

1

# <u>TABLE OF AUTHORITIES</u>

2

## CASES

3

4
*Acoustics, Inc. v. Trepte Constr. Co.,*
   14 Cal.App.3d 887, 916 (1971) ...................................................................5, 6

5

6
*Draper v. Coombs*,
   792 F.2d 915, 924 (9th Cir. 1986)............................................................... 9

7

8
*Educational Serv., Inc. v. Maryland State Board for Higher Education*,
   710 F.2d 170, 176 (4th Cir. 1983)............................................................... 9

9

10
*Eitel v. McCool*,
   782 F.2d 1470, 1471-72 (9th Cir. 1986).........................................4, 7, 9

11

12
*Geddes v. United Fin. Group*,
   559 F.2d 557, 560 (9th Cir. 1977)...............................................................5, 8

13
*Landstar Ranger, Inc. v. Parth Enters, Inc.*,
   725 F.Supp.2d 916, 921 (C.D. Cal. 2010)................................................. 8

14

15
*McKnight v. Webster*,
   499 F.Supp. 420, 424 (E.D. PA 1980) ....................................................9, 10

16

17
*NewGen, LLC v. Safe Cig, LLC*,
   804 F.3d 606, 616 (9th Cir. 2016).........................................................9, 10

18

19
*O'Connor v. State of Nevada*,
   27 F.3d 357, 364 (9th Cir. 1994)............................................................... 9

20

21
*Pena v. Seguros La Comercia, S.A.*,
   770 F.2d 811, 814 (9th Cir. 1985)..............................................................11

22

23
*Penpower Tech, Ltd. v. S.P.C. Tech.*,
   627 F. Supp. 2d 1083 (N.D. Cal. 2008) ..............................................7, 11

24

25
*PepsiCo, Inc. v. Cal. Sec. Cans*,
   238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). ....................................4, 5

26

27
*Reichert v. Gen. Ins. Co.*,
   68 Cal.2d 822, 830 (1968) ....................................................................... 5

28

2

*Shanghai Automation Instrument Co. Ltd. v. Kuei*,
    194 F.Supp.2d 995, 1005 (N.D. Cal. 2001)..........................................................10

*Walters v. Statewide Concrete Barrier, Inc.*,
    No. C 04-2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006) .......... 7

**STATUTES**

Code of Civil Procedure § 1620 ............................................................................. 6

Code of Civil Procedure § 3300 ............................................................................. 6

Fed. R. Civ. P. 55.................................................................................................... 3

**OTHER AUTHORITIES**

RESTATEMENT 2d. CONTRACTS § 235(2) ....................................................5, 6

3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND RELEVANT FACTS

Plaintiff Ameris Bank d/b/a Balboa Capital Corporation ("Plaintiff" or "Balboa") submits the instant Second Motion for Default Judgment against defendants Old Pylon LLC, a Texas limited liability company ("Old Pylon"), and Candelario Guzman Martinez, an individual ("Martinez") (collectively, "Defendants").

This action involves a claim for damages by Balboa against both Defendants for the breach of the written Equipment Financing Agreement No. 405785-000 (the "EFA"), and the breach of the corresponding personal guaranty of that agreement. [*See* Declaration of Don Ngo ("Ngo Decl."), ¶¶3-4, Exh. A.]

Specifically, Balboa, on the one hand, and Old Pylon and Martinez, on the other, entered into the EFA on or about May 27, 2022. [*See id*.] Under the terms of the EFA, Balboa loaned to Old Pylon the sum of $191,764.81, in order to finance equipment for its business (the "Collateral"). [*See id*.]

Concurrent with the execution of the EFA, and in order to induce Balboa to enter into the EFA with Old Pylon, Martinez personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of the EFA (the "Guaranty"). [*See id*., ¶4, Exh. B.] Balboa relied on such Guaranty to agree to loan Old Pylon to finance the Collateral for its business. [*See id*.]

Under the EFA, Old Pylon was required to make sixty (60) monthly payments of $3,983.41, beginning on June 29, 2022. [*See id*., ¶5.] The last payment received by Balboa was credited toward the payment due for July 29, 2023. [*See id*.] Therefore, on August 29, 2023, Old Pylon breached the EFA, and Martinez breached the Guaranty by failing to make the monthly payment due on that date, and thus, both have remained continuously in default. [*See id*.]

At the time of Defendants' default there remained forty-six (46) monthly payments in the amount of $3,983.41, for a total of $183,236.86 due to Balboa.

In addition, based on the amount due of $183,236.86, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from August 29, 2023, the date of breach, to May 6, 2024, the date noticed for the hearing of this Default Judgment Motion ("Default Motion"), for a total interest amount of **$12,650.40**, accruing at a rate of **$50.20 per day**, until the entry of judgment.  [*See id.*, ¶7; *see also* Declaration of Jared T. Densen ("Densen Decl."), ¶¶5-6.]

Pursuant to Paragraph 20 of the EFA, Balboa is also entitled to recover its attorneys' fees and costs from Defendants.  [*See* Densen Decl., ¶7.]  The amount of reasonable attorneys' fees is fixed by Local Rule 55-3, in the sum of **$7,264.73**. [*See id.*]  Balboa has incurred **$603.00**, in recoverable costs.  [*See id.*]

Balboa's Default Motion satisfies the procedural requirements of Local Rule 55-1 and 55-2, and Federal Rule of Civil Procedure 55(b).  Balboa filed its Complaint and case-initiating documents on December 14, 2023.  [*See* Dkts. 1-4.] Old Pylon and Martinez were both properly served on February 12, 2024, pursuant to Federal Rule of Civil Procedure 4.  [*See* Dkts. 11-12.]  On March 5, 2024, Balboa filed its Request for Clerk to Enter Default against Defendants ("Default Entry Request"), and the Clerk entered the default against each of the defendants on March 6, 2024.  [*See* Dkts. 13-14.]

Neither Defendant is a minor or an incompetent person, nor are Defendants currently in the military service or otherwise exempt from a default judgment under the Servicemembers Civil Relief Act ("SCRA").  [*See* Densen Decl., ¶4, Exh. D.] In addition, neither Old Pylon, nor any of its shareholders or members, including Martinez, are located in California or Georgia.  [*See* Densen Decl., ¶4.]

Moreover, this Court has subject matter jurisdiction over the instant action. The amount in controversy, as alleged in the Complaint and as set forth herein,

exceeds $75,000.  [*See* Dkt. 1.]  Plaintiff Balboa was and still operates as a California corporation, with its principal place of business in Orange County, California. [*See* Dkt. 1, ¶1; *see also* Densen Decl., ¶8.]  Balboa is also now a wholly owned subsidiary of Ameris Bank, and operating as a division of Ameris Bank, a Georgia state-chartered banking corporation, and accordingly, Balboa is a citizen of the State of California, as well as the State of Georgia, via its parent company, Ameris Bank.  [*See id.*]

Defendant Old Pylon is a Texas limited liability company, with its principal place of business in Hidalgo County, Texas.  [*See id.*, ¶9.]  Upon information and belief, Old Pylon's sole officer and/or director – defendant Martinez – is a resident of the State of Texas. [*See id.*, Exh. F.]

As set forth below, a default judgment should be entered against each of the Defendants since Balboa satisfies all seven factors under *Eitel*.  Moreover, Balboa has adequately proven its damages.  Thus, Balboa respectfully requests that this Court grant its request for a default judgment against Defendants in the amount of **$203,754.99**.

## II.    **LEGAL ARGUMENT**

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," the Court may enter a judgment of default upon Plaintiff's Motion after an entry of default.  *See* Fed. R. Civ. P. 55.  Local Rule 55 sets forth the procedural requirements that must be satisfied by a party moving for a default judgment.  Balboa's Motion has satisfied such requirements.

Here, Balboa filed its Complaint and case-initiating documents on December 14, 2023.  [*See* Dkts. 1-4.]  Old Pylon and Martinez were both properly served on February 12, 2024, pursuant to Federal Rule of Civil Procedure 4.  [*See* Dkts. 11-12.]  On March 5, 2024, Balboa filed its Default Entry Request, and the Clerk entered the default against each of the defendants on March 6, 2024.  [*See* Dkts. 13-14.]

Neither Defendant is a minor or an incompetent person, nor are Defendants currently in the military service or otherwise exempt from a default judgment under the SCRA.  [*See* Densen Decl., ¶4, <u>Exh. D</u>.]  In addition, neither Old Pylon, nor any of its shareholders or members, including Martinez, are located in California or Georgia.  [*See* Densen Decl., ¶4.]

The Ninth Circuit follow the seven *Eitel* factors in deciding whether to enter a default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  A plaintiff need not prove that all seven factors weigh in its favor, as courts *may* consider these factors in their discretion on whether to enter a default judgment.  *See id*.

Here, the underlying facts in this action show that all seven of the *Eitel* factors weigh in Balboa's favor, and thus, supports the entry of default judgment.

### A.    <u>Plaintiff Will Be Highly Prejudiced If Its Default Judgment Motion Is Denied.</u>

A situation in which a plaintiff will be without any other recourse or recovery should its default judgment Motion be denied qualifies as prejudice.  *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

Here, Balboa has submitted its Motion for Default Judgment as a last resort due to Defendants' deliberate unwillingness to accept responsibility for its actions or even acknowledge Balboa's allegations.

The fact remains that Balboa financed equipment for Defendants in the amount of $191,764.81, with Defendants agreeing to make sixty (60) monthly payments of $3,983.41, for which forty-six (46) monthly payments for a total of

1    $183,236.86 still remained due to Balboa at the time of Defendants' default.  [*See*

2    Ngo Decl., ¶¶5-6, Exh. C.]

3        Balboa filed its Complaint in this action to recover the monies owed on it,

4    but Defendants have been unwilling to participate in, or otherwise acknowledge, the

5    litigation.  Balboa's Motion for Default Judgment is its final option for an attempt

6    at recovery, and without the Court granting the default judgment, Balboa will be

7    prejudiced and be denied its right to a judicial resolution of its presented claims.

8    *See PepsiCo*, 238 F.Supp.2d at 1177.

9        Moreover, if Balboa's Motion for Default Judgment is denied, it will suffer a

10   significant loss due to no fault of its own, and Defendants will obtain a significant

11   windfall of over $183,236.86.  Not only will the deliberate nonaction by

12   Defendants and their continued stalling techniques be unjustly rewarded, but

13   Balboa will effectively be penalized for its procedurally proper demands for the

14   return of its monies available through the court system's proper channels.

15       Balboa will be substantially prejudiced, especially with no other available

16   recourse, should its Motion for Default Judgment be denied, and thus, further

17   supports the Default Judgment against Defendants to be granted by this Court.

18       **B.    Plaintiff Has A High Likelihood Of Success On The Merits Of Its**

19            **Substantive Claims And Its Complaint Is Sufficiently Pled.**

20       "The general rule of law is that upon default[,] the factual allegations of the

21   complaint, except those relating to the amount of damages, will be taken as true."

22   *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).  Courts often

23   consider the second (merits of the claim) and third (sufficiency of the complaint)

24   factors under *Eitel* together.  *See PepsiCo*, 238 F.Supp.2d at 1177.

25       The elements for a breach of contract are: (1) the existence of a contract, (2)

26   performance by the plaintiff of its obligations under the contract, (3) breach of the

27   contract by the defendant, and (4) resulting damages proximately caused by the

28   defendant's breach of contract.  *Reichert v. Gen. Ins. Co.*, 68 Cal.2d 822, 830

5

(1968); *Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal.App.3d 887, 916 (1971); *see also* Civ. Code §§ 1620, 3300; and RESTATEMENT 2d. CONTRACTS § 235(2).

Here, all elements are met. Specifically, Balboa, on the one hand, and Old Pylon and Martinez, on the other, entered into the EFA, under which Balboa loaned to Old Pylon the sum of $191,764.81, in order to finance the Collateral for its business. [*See* Ngo Decl., ¶¶3-4, Exh. A.]

Concurrent with the execution of the EFA, and in order to induce Balboa to enter into the EFA with Old Pylon, Martinez personally guaranteed, in writing, the payments of the then-existing and future indebtedness due and owing to Balboa under the terms of the EFA. [*See id.*, ¶4, Exh. B.] Balboa relies on such Guaranty to agree to finance the Collateral for Old Pylon's business. [*See id.*]

Under the EFA, Old Pylon was required to make sixty (60) monthly payments of $3,983.41, beginning on June 29, 2022. [*See id.*, ¶5.] The last payment received by Balboa was credited toward the payment due for July 29, 2023. [*See id.*] Therefore, on August 29, 2023, Old Pylon breached the EFA, and Martinez breached the Guaranty by failing to make the monthly payment due on that date, and thus, both have remained continuously in default. [*See id.*]

At the time of Defendants' default there remained forty-six (46) monthly payments in the amount of $3,983.41 for a total of $183,236.86, due to Balboa. [*See id.*, ¶6.]

There is no doubt, and it cannot be disputed that: (1) Balboa and Defendants entered into the EFA; (2) Martinez personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of the EFA; (3) Old Pylon received the loan in order to finance the Collateral for its business; (4) Defendants ceased making payments pursuant to the EFA; and (5) Balboa has suffered and continues to suffer damages due to Defendants' continued nonpayment. Thus, Balboa has a substantially high likelihood in

succeeding on the merits of its claims.  In fact, no known defenses exist to any of the material facts.

**C.**    **The Sum Of Money At Stake Favors An Entry Of A Default Judgment Against Defendants.**

As a general rule, courts factor the sum of money at stake on a case-by-case basis, and in relation to the other factors influencing whether to enter default judgment.  *See Eitel*, 782 F.2d at 1472 (default judgment was denied where plaintiff was seeking $3 million in damages *and* the parties disputed material facts).  This requires the court to assess whether the recovery sought is proportional to the harm caused by defendant's conduct.  *See Walters v. Statewide Concrete Barrier, Inc.*, No. C 04-2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006) ("[i]f the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted").

In *Penpower Tech, Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083 (N.D. Cal. 2008), despite reasoning that plaintiff's request for $677,075.37 in treble damages, $500,000.00 in punitive damages, $100,000.00 in statutory damages, attorneys' fees of $16,497.00, and costs of $2,005.00, were "speculative" and weighed against default judgment, the court nevertheless granted plaintiff's default judgment.

Here, Balboa seeks compensatory damages pursuant to the EFA in the amount of **$183,236.86**; prejudgment interest from August 29, 2023, the date of breach, to May 6, 2024, the date noticed for the hearing of this Default Motion, in the amount of **$12,650.40**, plus **$50.20 per day** until the entry of judgment; statutory attorneys' fees, in the amount of **$7,264.73**; and costs in the amount of **$603.00**.  [*See* Densen Decl., ¶¶5-7, <u>Exh. D</u>.]  The damages sought are contractually-based and arise out of the clear terms and obligations of the EFA; the prejudgment interest was calculated at the statutory rate of ten percent (10%) per annum; and the attorneys' fees requested are fixed by Local Rule 55-3.  [*See id.*, ¶5.]

7

As such, the sum of money sought is reasonable and far from speculative.  It is also substantially less than the $3 million sought in *Eitel*, in which this sum, <u>and other factors</u>, weighed in the favor of denying default judgment.  And it is also substantially less than the roughly $1.3 million sought in *Penpower Tech*, in which default judgment was granted, despite the sum of money being deemed "speculative."

Thus, the sum of money sought in this action weighs in the favor of granting default judgment, especially in the light of the other seven *Eitel* factors, and due to the certainty and reasonableness of the sum.

**D.    <u>There Are No Material Facts That Are Reasonably In Dispute.</u>**

"The general rule of law is that upon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *See Geddes, supra*, 559 F.2d at 560.  Where a plaintiff's complaint is well-pleaded and the defendants make no effort to properly respond, the likelihood of disputed facts is very low.  *See Landstar Ranger, Inc. v. Parth Enters, Inc.*, 725 F.Supp.2d 916, 921 (C.D. Cal. 2010).

As thoroughly detailed in Section II.B., *supra*, there are no material facts that are reasonably in dispute.

Here, specifically, Balboa, on the one hand, and Old Pylon and Martinez, on the other, entered into the EFA on or about May 27, 2022.  [*See* Ngo Decl., ¶3.] Under the terms of the EFA, Balboa loaned to Old Pylon the sum of $191,764.81, in order to finance the Collateral for its business.  [*See id*.]

Concurrent with the execution of the EFA, and in order to induce Balboa to enter into the EFA with Old Pylon, Martinez personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of the EFA.  [*See id*., ¶4, <u>Exh. B.</u>]  Balboa relied on such the Guaranty to agree to loan Old Pylon to finance the Collateral for its business.  [*See id*.]

Under the EFA, Old Pylon was required to make sixty (60) monthly payments of $3,983.41, beginning on June 29, 2022.  [*See id*., ¶5.]  The last payment received by Balboa was credited toward the payment due for July 29, 2023.  [*See id*.]  Therefore, on August 29, 2023, Old Pylon breached the EFA, and Martinez breached the Guaranty by failing to make the monthly payment due on that date, and thus, both have remained continuously in default.  [*See id*.]

At the time of Defendants' default there remained forty-six (46) monthly payments in the amount of $3,983.41, for a total of $183,236.86, due to Balboa. [*See id*., ¶6.]

Defendants cannot dispute any of the facts in any way or make any reasonable arguments surrounding any of the material facts in this action.  If anything, Defendants' refusal to participate in, or even acknowledge the litigation, is evidence that no such defense exists.

### E.    Defendants' Defaults Are Not The Result Of Excusable Neglect.

Excusable neglect is not found where a defendant who was properly served simply ignored the deadline to respond.  *See NewGen, LLC v. Safe Cig, LLC*, 804 F.3d 606, 616 (9th Cir. 2016) (adding that defendant's counsel contacting plaintiff's counsel after default had been entered did not constitute to "excusable neglect").  In fact, courts have required some showing of good faith by the defaulted defendant to constitute "excusable neglect." *See Eitel*, 782 F.2d at 1471-72 (defendant's failure to answer was held to be excusable neglect in light of ongoing settlement negotiations); *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986) (finding excusable neglect where defendant filed an answer past the deadline and on the same day that the motion for default judgment was filed); *O'Connor v. State of Nevada*, 27 F.3d 357, 364 (9th Cir. 1994) (excusable neglect was found where defendant has good faith of a timely answer); *Educational Serv., Inc. v. Maryland State Board for Higher Education*, 710 F.2d 170, 176 (4th Cir. 1983) (excusable neglect found where defendant had appeared in the action and opposed a request for

a preliminary injunction in which the party had set forth its defenses); *McKnight v. Webster*, 499 F.Supp. 420, 424 (E.D. PA 1980) (excusable neglect found where defendant sought an extension of time to respond, but a default judgment was sought in the interim).

Where the defendants "were properly served with the Complaint, the notice for the entry of default, as well as documents in support of the instant [default judgment Motion]," favors this factor for the entry of default judgment. *See Shanghai Automation Instrument Co. Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001).

Here, Defendants failed to make any showing whatsoever that their unwillingness to participate in the litigation stemmed from, or was in any way due to, excusable neglect. Martinez was properly served via substituted service, both as the agent for service of process for Old Pylon, and as an individual defendant, by leaving copies with Dahlila Guzman – office manager – and thereafter mailing copies to Martinez. [*See* Dkts. 11-12.]

Further, Defendants were additionally served at the same address thereafter with the Default Entry Request. [*See* Dkt. 13.] Defendants have not yet made any appearance in the action, and thus, have not made any effort to answer, defend, or otherwise participate, in this action.

As detailed above, courts have found for excusable neglect only in cases in which a defendant makes good faith showing that the defendant attempts to participate in the litigation to address and defend the allegations set forth against the defendant. Declining to respond to a complaint after proper service (even in the case where defendant's counsel contacts plaintiff's counsel after the entry of default), does not warrant a finding of excusable neglect. *See NewGen*, 804 F.3d at 616.

Here, Defendants have failed to acknowledge their wrongdoings and the allegations they face, even in the slightest degree. Instead, Defendants have

blatantly ignored Balboa's Complaint and all other papers filed thereafter. Rather, Defendants' course of action in response to Balboa's Complaint, or the apparent lack thereof, is intentional, and thus, would not constitute excusable neglect.

## F.    Policy Concerns Favor Default Judgment In This Matter.

Although courts have expressed that as a general rule, policy favors decisions on the merits, cases should be decided on its merits only when *reasonably possible*. *See Pena v. Seguros La Comercia, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985) (emphasis added). The policy preference to decide a case on its merits is not dispositive, and thus, does not preclude a court from granting a default judgment. *See Penpower Tech, Ltd.*, 627 F.Supp.2d at 1093 (defendants' failure to respond to a Complaint makes a case decision on its merits impractical, if not, impossible).

Here, even the policy concerns to decide a case on its merits favor Balboa to grant Balboa's request for a default judgment. As detailed in II.E., *supra*, Defendants have made it abundantly clear that they will not participate in this litigation, or even acknowledge the instant action. Defendants have deliberately chosen a course of action to simply ignore Balboa and its claims against them, including their own liability. Thus, the Court's decision will not be based on the merits of this case since there is no reasonable possibility at this point given Defendants' refusal to participate in this litigation.

Moreover, policy concerns certainly do not weigh in favor of rewarding Defendants for their unwillingness to account for their liability to Balboa, and the extremely prejudicial windfall they would receive should their deliberate silence and stalling techniques be rewarded, at Balboa's expense. *See* Section II.A., *supra*.

## G.    Plaintiff Has Proven Its Damages.

Under the EFA, Old Pylon was required to make sixty (60) monthly payments of $3,983.41, beginning on June 29, 2022. [*See* Ngo Decl., ¶5.] The last payment received by Balboa was credited toward the payment due for July 29, 2023. [*See id.*] Therefore, on August 29, 2023, Old Pylon breached the EFA, and

11

Martinez breached the Guaranty by failing to make the monthly payment due on that date, and thus, both have remained continuously in default.  [*See id*.]

At the time of Defendants' default there remained forty-six (46) monthly payments in the amount of $3,983.41, for a total of $183,236.86, due to Balboa.  [*See id.*, ¶6.]

In addition, based on the amount due of $183,236.86, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from August 29, 2023, the date of breach, to May 6, 2024, the date noticed for the hearing of this Default Motion, for a total interest amount of **$12,650.40**, accruing at a rate of **$50.20 per day**, until the entry of judgment.  [*See id.*, ¶7; *see also* Densen Decl., ¶¶5-6.]

Pursuant to Paragraph 20 of the EFA, Balboa is also entitled to recover its attorneys' fees and costs from Defendants.  [*See* Densen Decl., ¶7, <u>Exh. E</u>.]  The amount of reasonable attorneys' fees is fixed by Local Rule 55-3, in the sum of **$7,264.73**.  [*See id*.]  Balboa has incurred **$603.00**, in recoverable costs.  [*See id.*, <u>Exh. E</u>.]

Altogether, this totals out to <u>**$203,754.99**</u> (as of May 6, 2024), calculated as follows:

|  |  |  |
|---|---|---|
| - | Amount owed: | $183,236.86 |
| - | Prejudgment Interest: | $12,650.40 |
| - | Attorneys' Fees: | $7,264.73 |
| - | <u>Recoverable Costs:</u> | <u>$603.00</u> |
| - | **Total** | **$203,754.99** |

//
//
//
//
//

12

### III.    <u>CONCLUSION</u>

Based on Balboa's Complaint, Default Judgment Motion, and all supporting papers, Balboa respectfully requests that the Court grant its Default Judgment Motion against Defendants, in the total amount of **$203,754.99**.

DATE: April 8, 2024                SALISIAN | LEE LLP

By:  _____
     Jared T. Densen
     Neal S. Salisian
     Glenn R. Coffman

Attorneys for Plaintiff
AMERIS BANK d/b/a BALBOA CAPITAL
CORPORATION